### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE ANN KLUCK, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  21-1674 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                          July 15, 2022

Jamie Ann Kluck ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has replied.  For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

### I.      PROCEDURAL HISTORY[1]

On June 10, 2019, Plaintiff applied for DIB and SSI, alleging disability, based upon mental health impairments, that commenced on April 1, 2018; Plaintiff subsequently amended her alleged onset date to March 1, 2018.  R. 15.  The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing.  *Id.*  On September 18, 2020, because of COVID restrictions, Plaintiff had a telephonic administrative hearing before Jennifer Spector,

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Statement of Issues and Brief in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

Administrative Law Judge ("the ALJ").  *Id.*  Plaintiff, represented by an attorney, and Vanessa Ennis, a vocational expert, ("the VE") testified at that hearing.  *Id.*  On September 29, 2020, the ALJ, using the sequential evaluation process for disability, issued an unfavorable decision.[2]  R. 15-30.  The Social Security Administration's Appeals Council denied Plaintiff's request for review, on February 8, 2021, making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    Personal History

Plaintiff, born, on March 23, 1996, lives with both her parents.  R. 44-45.  She is able to drive, R. 45, obtained a GED in 2018, *id.*, and last worked in 2018.  R. 17.  Plaintiff has no past relevant work, R. 28, because all of her past jobs were of short duration and yielded insufficient

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

earnings.

B.    Plaintiff's Testimony

Plaintiff testified that, when she had a part-time job at Target, whenever she worked at the register, she was so nervous about interacting with customers, that she pulled her hair out in clumps; the problem has been so bad, that she has worn hats to cover up her bald spots.  R. 47, 50-51.  She has had this problem, called Trichotillomania, since she was in 11th grade; it is an involuntary condition.  R. 50.  The medication she takes helps reduce the amount of hair she pulls out; at the time of the hearing she had no bald spots.  R. 52.

In addition to Trichotillomania, Plaintiff suffers from borderline personality disorder ("BPD"), social anxiety, depression, and generalized anxiety.  R. 54.  BPD causes her to engage in "black-and-white thinking," quick mood swings, and no control over her mood.  *Id.*  Her anxiety manifests itself as hyperventilation, increased heart rate, shaking, mumbling, stuttering, staring at the ground, and feeling weight on her chest.  *Id.*  A severe anxiety attack lasts for approximately an hour; she experiences them three times a week.  R. 54-55.  Plaintiff lies down to alleviate her symptoms.  R. 55.  She also experiences fits of disproportionate rage approximately bi-weekly. *Id.*  During fits, Plaintiff yells incoherently, turns red in the face, and exhibits extreme rudeness. *Id.*  She sometimes experiences less extreme anger, that is still disproportionate to the stimulus, approximately three to four times per week.  R. 56.

Plaintiff admits to having a hygiene problem; she has gone three or four days without showering or changing clothes.  R. 57.  In fact, she slept in the outfit she wore to the administrative hearing and had worn it for two days.  R. 57-58.  Additionally, she cannot adhere to a regular sleep schedule; at times ,Plaintiff does not fall asleep until 5:00 or 6:00 in the morning.  R. 57.

Plaintiff's aversion to interacting with others is extreme; she shops alone at two stores only

3

or is accompanied by her parents or boyfriend.  R. 58.  At the two stores she does patronize unaccompanied, Plaintiff has worked out a shopping routine that minimizes human interaction, including the use of self-checkout.  R. 58-59.

Plaintiff believes that treating with her therapist, Ms. Salkind, has been beneficial.  R. 60. Treatment sessions allow her to vent and Ms. Salkind has taught her useful coping mechanisms. *Id.*  Plaintiff finds the patterned breathing technique particularly helpful to decrease her heart rate after an anxiety attack.  R. 61.

C.    Vocational Testimony

The ALJ asked the VE to consider a person of Plaintiff's age, education and work experience, who has no exertional limitations, but the following non-exertional limitations:  able to perform occupations that are typically self-paced, with no tandem or teamwork with coworkers on the same task and no exposure to or interactions with the general public; able to work in proximity to others, but with no more than occasional superficial interactions with coworkers and supervisors; and limited to occupations where the work setting and the tasks performed are typically very similar from day to day.  R. 66-67.  The VE identified three jobs this individual could perform:  (1) table worker (leather products), 60,000 in the national economy; (2) inserter of paper goods, 100,000 positions in the national economy; and (3) garment bagger, 100,000 positions in the national economy.  R. 67.  Additionally, the VE testified that a person who could not tolerate even occasional interaction with co-workers and supervisors cannot perform any job. R. 67.  Finally, missing more than one day of work per month or being off-task more than 14% of the time precludes all work.  R. 69.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

4

1.      [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.

2.      [Plaintiff] has not engaged in substantial gainful activity since March 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.       [Plaintiff] has the following severe impairments: borderline personality disorder, attention deficit hyperactivity disorder (ADHD), trichotillomania, obsessive compulsive disorder (OCD), and anxiety disorder (20 CFR 404.1521(c) and 416.920(c)).

4.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to occupations that are typically self-paced, with no tandem or teamwork with coworkers on the same task and no exposure to or interactions with the general public; she can work in proximity to others but with no more than occasional superficial interactions with coworkers and supervisors; and she is limited to occupations where the work setting and the tasks performed are typically very similar from day to day.

6.      [Plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7.      [Plaintiff] was born on March 23, 1996 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue because Plaintiff has no past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 1, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 17-18, 21, 29-30.

## IV.   DISCUSSION

A.     Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91.

B.     Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff had no past relevant work, she could perform jobs that exist in the national economy and, hence, was not disabled.  R. 15-30.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by failing to provide adequate reasons to reject the opinions of her treating

7

therapist, Marianne Salkind, MS, LPC.  Pl. Br. at 6-23, 25-27.  Because of this error, Plaintiff

maintains that the ALJ reversibly erred when she concluded that Plaintiff does not satisfy the B or

C criteria for the relevant mental health listed impairments and when assessing Plaintiff's residual

functional capacity ("RFC").  *Id.*   Plaintiff also argues that the ALJ reversibly erred when she

failed to evaluate the September 7, 2020 statement authored by Plaintiff's mother.  *Id.* at 24-25.

Finally, Plaintiff argues that the statute providing for the appointment of former Commissioner

Saul violates federal constitutional separation of power principles and should result in a remand.

*Id.* at 4-6.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-23.  This court finds merit

in Plaintiff's arguments that the ALJ reversibly erred when deciding that Plaintiff did not meet the

C criteria of the relevant mental health listed impairments and by failing to evaluate the September

7, 2020 statement of Plaintiff's mother.  Plaintiff's other arguments lack merit.[3]  Based on this

determination, the court need not address her constitutional argument.[4]

1.   The ALJ Failed to Properly Evaluate Ms. Salkind's Opinions

Ms. Salkind was Plaintiff's treating therapist since the alleged onset date.  On August 1,

2020, Ms. Salkind prepared a Medical Opinion Regarding Ability to Perform Work Related

Activities (Mental).  R. 453-54.  She opined that Plaintiff had almost no ability to perform any of

the mental functions required for work; Ms. Salkind also opined that Plaintiff would miss more

than three days of work per month.  *Id.*  Per the VE, this latter limitation would preclude any work.

R. 69.  Ms. Salkind attributed Plaintiff's poor mental functioning to her Borderline Personality

---

[3] Plaintiff asserts that Ms. Salkind's opinions also satisfy the B criteria for Listed Impairment 12.06, because they compel the conclusion that she has marked limitation in interacting with others and adapting or managing herself.  Pl. Br at 12-20.  However, Ms. Salkind's opinions do not clearly establish these levels of limitation.  By contrast, her opinions clearly establish the existence of the C criteria for Listed Impairment 12.06.  *See infra.* Section IV(C)(1).

[4] Plaintiff agrees that, if any of her non-constitutional arguments prevail, this court need not address her constitutional argument.  Reply at 16.

Disorder ("BPD"), which results in "all or nothing thinking" and causes her "extreme difficulty to maintain healthy relationships, including work peers and social friends." R. 454.

Ms. Salkind further opined that Plaintiff required a mental health therapy, psychosocial supports, or a highly structured setting that is ongoing to diminish the symptoms and signs of Plaintiff's mental disorder. R. 455. She explained that, through therapy, Plaintiff has "improved in understanding her disorders and how they affect her life and those around her." *Id.* Ms. Salkind also opined that Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of her normal life. *Id.* She explained that Plaintiff's:

> symptoms consistently increase whenever she attempts to socialize or acclimate to new settings. She is not able to adjust to social settings without experiencing a decompensation of mood.

*Id.* Ms. Salkind's findings satisfy the C criteria for Listed Impairment 12.06, which is for anxiety, panic, or excessive compulsive disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(G)(2)(b), (c). Hence, if the ALJ accepted Ms. Salkind's opinion, Plaintiff would be disabled.[5]

The ALJ considered Ms. Salkind's opinions and found that they were "generally well supported" by her explanations. R. 28. However, the ALJ concluded that her opinions were not "consistent with the other evidence of record." *Id.* As support for this assertion, the ALJ wrote:

> [Plaintiff] went for medication management with Dr. Sinha in June 2020 for the first time since July 2019, and she was referred to a higher level of care as she had been noncompliant with her treatment plan (Exhibit 12F). It was not clear that this was based on any increase in symptoms. According to Plaintiff, she had an appointment in March around the coronavirus pandemic shutdown

---

[5] The ALJ does not dispute that Plaintiff satisfies the A criteria for Listed Impairment 12.06. *See* R. 18. This is likely because the record clearly demonstrates that Plaintiff suffers from restlessness, difficulty concentrating, irritability and sleep disturbance. These four symptoms are sufficient to satisfy the A requirements for an anxiety disorder. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06(A)(1). She also satisfies the A criteria for Panic Disorders, because she suffers from disproportionate fear or anxiety about at least two different situations (for Plaintiff, being in a crowd, being in a line). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06(A)(2).

and had enough medications to last until June.   She has tried numerous jobs without sustaining them, but virtually all of them required a very significant degree of high-level interaction with others.   Therefore, Ms. Salkind's opinion is found to be not persuasive.

*Id.*  For the reasons provided below, the ALJ's explanation concerning why Ms. Salkind's opinions were inconsistent with other record evidence cannot be sustained.

Under the current regulations, the two most important factors to consider when evaluating a medical source's opinion are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Herein, the ALJ found that Ms. Salkind's opinion was well supported.  R. 28. Hence, the remaining important factor was consistency.  The ALJ's explanations for why Ms. Salkind's opinions were inconsistent are erroneous, on their face.  The first explanation concerns Plaintiff being referred for a higher level of care.  R. 28.  That is not inconsistent with Ms. Salkind's opinions that Plaintiff needs mental health therapy, psychosocial supports, or a highly structured setting that is ongoing to diminish the symptoms and signs of Plaintiff's mental disorder.  R. 455. In fact, it is consistent.  Next, the ALJ relies upon Plaintiff's failure to sustain numerous jobs that require more social contact than Ms. Salkind opines, and Plaintiff testified, that she can tolerate. R. 28.  Again, this evidence is consistent with Ms. Salkind's opinions.  It is in no way inconsistent with Ms. Salkind's opinion that Plaintiff would miss more than three days of work per month.  The ALJ cites no other evidence to support her conclusion.

The ALJ's explanations fail to demonstrate that Ms. Salkind's opinions are inconsistent with other record evidence.  Hence, the explanations are "wrong reasons," which cannot sustain her conclusion.  *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).  Moreover, under the proper standard of judicial review, this court may not search the record for evidence that might support the ALJ's conclusion; instead, this court may only consider the explanations the ALJ

actually provides.  *Fargnoli*, 247 F.3d at 44 n.7 (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943).  The ALJ's explanations constitute reversible error, because if Ms. Salkind's opinions are accepted, Plaintiff satisfies the C criteria of Listed Impairment 12.06 and is disabled at step three of the sequential evaluation process ("SEP"); furthermore, Ms. Salkind's opinion that Plaintiff would miss three days of work per month would, per the VE's unrebutted testimony, R. 69, render her disabled at SEP step five.  This case must be remanded so that the ALJ can reconsider Ms. Salkind's opinions in light of the whole record and decide whether to credit them.  If so, Plaintiff is disabled.

      2.    <u>The ALJ Reversibly Erred by Failing to Evaluate the September 7, 2020 Statement</u>
             <u>of Plaintiff's Mother</u>

On September 7, 2020, Plaintiff's mother, Judith Kluck ("Judith" or "Mother") prepared a statement under penalty of perjury.  R. 456-58.  In it, she largely corroborates Plaintiff's testimony about her condition and some of Dr. Salkind's opinions.  For example, Judith stated that Plaintiff's BPD causes her to see everything in "black and white," (similar to Ms. Salkind's "all or nothing thinking" observation), not go out alone, and to misinterpret conversations causing her to become very agitated.  R. 456.  Ms. Salkind and Mother both stated that, in work situations, Plaintiff decompensates.  *Id.*  Plaintiff's depression sometimes causes her to stay in bed for a day or more at a time.  R. 457.  Judith also confirmed that Plaintiff has a long-standing problem with pulling out her hair; at times, Plaintiff has had bald spots, which she covered up by wearing hats..  *Id.*

The ALJ noted that Judith submitted the September 7 2020 statement.  R. 22.  However, the ALJ did not evaluate whether she found it persuasive.  *See id.*  This is error, because an ALJ is required to consider and evaluate lay evidence which corroborates a claimant's testimony.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (citations omitted).  Furthermore, the error is not harmless, because it supports both Plaintiff's testimony and Ms. Salkind's opinions.

In particular, when the ALJ considers whether Ms. Salkind's opinions are consistent with "the other evidence of record," she will be forced to consider that Judith's statement corroborates Salkind's opinions that Plaintiff is incapable of perceiving nuance and decompensates when in a work setting.

An implementing order and order of judgment follow.